U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2013 JUN 26 P 12: 14

JON A. SANFILIPPO
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **"SIKHS FOR JUSTICE" (SFJ)**<br>on behalf of deceased and tortured<br>member of Sikhs community; | )<br>)<br>)<br>)<br>Civ. No **13-C-0723** |
| Shiromani Akali Dal (SAD) (Amritsar)<br>a.k.a. Shiromani Akali Dal Mann<br>on behalf of its deceased and tortured,<br>members, officers supporters | )<br>)<br>)<br>)<br>) |
| | **COMPLAINT** |
| JEET SINGH,<br>a victim of torture, on his behalf; | )<br>)<br>) |
| GURDEEP KAUR,<br>a victim of torture, on her own behalf; | )<br>)<br>) |
| | **CLASS ACTION** |
| JAGTAR SINGH<br>a victim of torture, on his own behalf; | )<br>)<br>) |
| Jhon Doe,<br>Un-named victims of torture | )<br>)<br>) |
| **Plaintiffs,** | )<br>)<br>) |
| v. | **JURY TRIAL DEMANDED** |
| | )<br>)<br>) |
| **Sukhbir Singh BADAL,**<br>a national and citizen of India,<br>President of Shirmoani Akali Dal (Badal)<br>and Home Minister of the State of Punjab | )<br>)<br>)<br>)<br>) |
| **Parkash Singh BADAL,**<br>a national and citizen of India<br>and Chief Minister of the State of Punjab | )<br>)<br>)<br>) |
| **Defendants** | )<br>)<br>) |

Plaintiffs, individually and collectively, allege the following:

## I. PRELIMINARY STATEMENT

1) The above named plaintiffs themselves or their legal representatives have suffered torture, cruel and inhuman treatment while residing in Indian State of Punjab, in the hands of Police and other law enforcement agencies that work under the orders and under the command and control of the defendants Sukhbir Singh BADAL and Parkash Singh BADAL (hereinafter "Sukhbir" and "Parkash", respectively).

2) Defendant Sukhbir is President of Shiromani Akali Dal (Badal) "SAD-Badal" the ruling political party of the State of Punjab which has been in power from 1997-2003 and 2007 till present. Defendant Sukhbir is and has been Home Minister and Deputy Chief Minister of the state of Punjab during the periods from 2009 till present. In his position as President of SAD-Badal, Deputy Chief Minister and Home Minister, Defendant Sukhbir has been and continues to be in command and control of the police and other security forces in the State of Punjab, India and the forces under his command and control have perpetrated acts of torture upon the defendants.

3) The defendant Parkash is and has been the Chief Minister of the State of Punjab during the periods from 1997 till 2002 and from 2007 till present. The defendant Badal has been and continues to be in command and control of the police and other security forces in the state of Punjab, India and the forces under his control have perpetrated acts of tortured upon the defendants.

4) The plaintiffs are those and represent those who were either personally tortured or represent those who were tortured or killed by the forces operating the command and control of the defendant during the relevant time period.

5) This is a civil action for compensatory and punitive damages against defendants Sukhbir Singh BADAL and Parkash Singh BADAL for violations of state, federal and international law committed against the Plaintiffs.

## II. PARTIES

### A. Named Plaintiffs

6) Plaintiff "Sikhs for Justice" is a legal entity registered and incorporated in the State of New York with a 501(c)(3) (not for profit) status, working to seek justice Sikhs killed or tortured in India from 1984 onwards.

7) Plaintiff Shiromani Akali Dal (SAD) a.k.a Shiromani Akal Dal Mann "hereinafter called as "SAD-Mann" is a political party of India headed by Simranjit Singh Mann and is struggling for the creation of independent Sikh

state of Khalistan through peaceful and democratic means. The Plaintiff SAD-Mann is moving through its International General Secretary Jeet Singh and on behalf of SAD-Mann members, officers and supporters who have been extra judicially killed, illegally detained, tortured and abused during the relevant times by the security forces in Punjab operating under orders, command and control of defendant Parkash Singh Badal.

8) Plaintiff Jeet Singh (husband of Gurdeep Kaur) is a male Sikh, national and citizen of India, currently residing in United States, previously resident of Dera Bassi, Patiala, Punjab, India and is International General Secretary of SAD-Mann, a political party demanding the creation of separate state of Khalistan through peaceful and democratic means. Due to his political activities from the platform of SAD-Mann, Jeet Singh was illegally detained, physically and mentally tortured and abused by the police and security forces operating under the orders of and under the command and control of the defendant Badal in 2001, 2007, 2008 and 2009.

9) Plaintiff Gurdeep Kaur, is a female, Sikh, national and citizen of India, currently residing in United States, previously a resident of Dera Bassi, Patiala, Punjab, India and member and supporter of Shiromani Akali Dal Mann, a political party demanding the creation of separate state of Khalistan through peaceful and democratic means. Due to her political activities and support of

Khalistan, in the year 2001, Plaintiff Gurdeep Singh was illegally detained, physically and mentally tortured and abused by the police and security forces operating under the orders of and under the command and control of the defendant Badal.

10)   Plaintiff Jagtar Singh, is a male, Sikh, national and citizen of India, currently residing in United States, previously resident of Sehna Barnala, Punjab, India and member and supporter of SAD-Mann. In December 1999 and September 2008, the plaintiff was illegally detained, physically and mentally tortured and abused by the police and security forces operating under the orders of and under the command and control of the defendant Badal.

11)   Plaintiff Jhon Doe is/are individual plaintiff(s) or their legal heirs who were extra judicially killed and/or tortured and/or abused by the security forces in the State of Punjab during the period from 1997 till 2002 and from 2007 till present while defendant Parkash Singh Badal was the Chief Minister of the State and was thus in full command and control of the security forces in the State of Punjab.

## B. Named Defendants

12)   Defendant Sukhbir Singh BADAL "Sukhbir" is an individual citizen and national of India. Sukhbir is President of Shiromani Akali Dal (Badal) "SAD-Badal" the ruling political party of the State of Punjab which has been in power

from 1997-2003 and 2007 till present. Defendant Sukhbir is and has been Home
Minister and Deputy Chief Minister of the state of Punjab during the periods
from 2009 till present. In his position as President of SAD-Badal, Deputy Chief
Minister and Home Minister, Defendant Sukhbir has been and continues to be
in command and control of the police and other security forces in the State of
Punjab, India and the forces under his command and control have perpetrated
acts of torture upon the defendants. As Home Minister of the Sate of Punjab,
Sukhbir heads all the security forces in Punjab, particularly Punjab Police.

13) Defendant Parkash Singh BADAL is an individual citizen and national of
India. Defendant is currently Chief Minister (CM) of the State of Punjab in
India. The defendant has been Chief Minister of the State of Punjab for the
periods from 1997 till 2002 and from 2007 till present and as CM heads all the
security forces in Punjab, particularly Punjab Police.

14) Both the defendants, individually and/or jointly, are also directly and
ultimately responsible for the actions of all the government machinery and
particularly the security forces and the Punjab Police the operating under their
command and control.

15) Both the defendants, individually and/or jointly, currently exercise and
during relevant times have exercised full control over the security forces in
Punjab and Punjab Police, particularly, appointment, transfer, promotion,

demotion, suspension and relegation of officers and members of the security forces and particularly Punjab Police.

16) Both the defendants, individually and/or jointly, throughout their tenure have actively shielded, protected and promoted the police officers who were or have been involved in gross human rights violations, extra judicial killings and torture.

17) Both the defendants, individually and/or jointly, are responsible for shielding and protecting Police Officer Sumedh Saini who has recently been promoted and appointed as Director General of Police (DGP) in Punjab by the defendants. DGP Saini is responsible for torture, extra judicial killing and "fake encounter" of several Sikhs.

### C. Class Allegations

18) The class consists of all men, women and children who are surviving the illegal detentions, torture (mental and physical) and degrading and inhuman treatment that they suffered in the hands of Punjab Police and other security forces in Punjab during the period and tenure of Parkash Singh Badal as Chief Minister of Punjab, specifically during the time period from 1997-2002 and from 2007 till present.

19) The class also consists of next of kin of the legal/personal representatives of the next of kin of those who were killed during the relevant time period in extra judicial killing in the hands of Punjab Police or other security forces in Punjab.

20) The exact number of class members is not known, however, it is commonly believed and estimated that from June 1984 till today, well over 100,000 (one hundred thousand) have been extra judicially killed and several hundred thousand tortured by the Punjab Police and other security forces in the state of Punjab, out of which well over 10,000 (ten thousand) cases of torture and extra judicial killings took place during the tenure of and while the defendant was Chief Minister of Punjab.

21) The claims of the named Plaintiffs, the class representatives, are typical of the claims of the class. The named plaintiffs are able to and will fairly and adequately protect the interests of the class.

22) There are common questions of law and fact in this action that affect and relate to each member of the class including:

      a. Whether the defendants, individually and/or jointly, directly or indirectly, ordered, participated, acquiescence, connived, was aware of, the unlawful act of security forces and Punjab Police committed in the State of Punjab during his tenure as Chief Minister?

8

b. Whether the defendants individually and/or jointly, authorized, commanded, or directed the unlawful acts of the security forces and Punjab Police operating under his command and authority?

c. Whether the defendants individually and/or jointly, knew or should have known that the security forces and particularly Police of the State of Punjab of which he is and was head of the Executive during his tenure, committed acts of torture, abuse and inhuman and cruel treatment against the named and unnamed individual Plaintiffs.

d. Whether the defendants individually and/or jointly, failed to punish or ratified such unlawful acts committed by the security forces and Police of the State of Punjab?

e. Whether the defendants individually and/or jointly, failed to take adequate and appropriate measures to prevent police officers and members of security forces in his State from committing acts of torture and violations of human rights?

f. Whether the defendants individually and/or jointly, acted upon, promoted and continues to promote and practice "impunity" towards the members of security forces and police officers who have been involved in torture and human rights abuses?

g. Whether the defendants' regime, past and present, is guilty of impunity by defending the notorious Police Officer Sumedh Saini, currently Director General of Punjab Police, before the courts in complaints of human rights violations?

h. Whether the defendant's actions, individual and/or joint, relating to security forces and police in Punjab, during 1997-2002 and 2007-2012 give rise to liability under applicable international and domestic laws.

23)     This action is properly maintained as a class action because: a) the Defendants acted and/or failed to act in a way generally application to the class, making any declaratory relief awarded appropriate to the class as a whole; and b) questions of law and fact common to the class predominate over questions affecting individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## III.    JURISDICTION AND VENUE

24)     Plaintiffs allege that Defendants are liable for Torture, Cruel and inhuman treatment as defined by customary international law and the Torture Victim Protection Act (TVPA), Pub. L. No. 102-256, 105 Stat. 73 (1992) (codified at 28 USC § 1350, note). Plaintiffs further allege that Defendants are

10

liable for violations of customary international law and treaty law prohibiting the commission of human rights violations and acts of torture. Accordingly, this Court has jurisdiction over this action based on 27 USC § 1350 (Alien Tort Statue) and 28 USC § 1331. The Court has jurisdiction over the state law claims pursuant to 28 USC § 1367.

25)       Venue is proper in the Southern District of New York pursuant of 28 USC §§ 1391(b)(3) and (d). This Court has personal jurisdiction over the defendants as at or around the time of filing the instant complaint, the defendant(s) is present in the state of New York within the territorial boundaries of this District.

## IV. STATEMENT OF FACTS

26)    Sikhs are a religious minority in India, a Hindu majority country and are largely inhibited in the Indian state of Punjab. Since country's independence in August 1947, Sikhs have been continuously deprived of many social, political and economic rights starting with the usurpation of separate status of Sikhism under the Indian Constitution. Article 25 of the constitution of India declares the Sikhs, who are by all means a separate and distinct religion, as Hindus. Continuous denial of rights to the Sikh community of Punjab eventually lead to the demand for creation of separate and independent state of Khalistan during

the decade of 80s and 90s. In June 1984 Golden Temple, the Vatican of Sikh religion in the city of Amritsar, Punjab was attacked by the Government with 30,000 armed troupes resulting in the death of more than 10,000 pilgrims. The operation is infamously known as "Operation Blue Star".

27)   In the aftermath of Operation Blue Star, the Punjab Government through Punjab police and other security forces at its disposal launched a massive counter insurgency initiative under which illegal detention of Sikhs, torture of Sikh detainees and even extra judicial killing of Sikh detainees were used as tools to suppress the movement in support of Khalistan.

28)   The defendant Parkash during his tenure as Chief Minister from 1997-2002 and 2007 till present and Defendant Sukhbir as Home Minister from 2009 till today, not only connived from covered up the unlawful acts of the police officer committed during 1984-97 but also allowed and acquiescenced commission of acts of torture by the police and other security forces under his command.

29)   It is believed and estimated that from June 1984 till today, well over 100,000 (one hundred thousand) have been extra judicially killed and several hundred thousand tortured by the Punjab Police and other security forces in the state of Punjab, out of which well over 10,000 (ten thousand) cases of torture and extra judicial killings took place during the tenure of and while the defendant was Chief Minister of Punjab.

## FACTS RELATED TO INJURIES TO INDIVIDUAL PLAINTIFFS

30) **Plaintiff Jeet Singh**, a baptized Sikh and supporter of separate Sikh State of Khalistan is International General Secretary SAD-Mann. Jeet Singh left India in April 2009 and is in USA since then. While living in Punjab, India, the Plaintiff suffered the following incidents of detentions and tortures during in the hands of security forces which were under the command and control of the Defendant.

    i.     **February 2001:**    Jeet Singh along with his wife Gurdeep Kaur was taken into custody by the Police from Sangroor, Punjab and was kept in illegal detention for 30 days without being charged with any crime. During the detention, Jeet Singh was severely beaten and tortured and at time was beaten in the presence of his wife to humiliate him and to mentally torment his wife who was forced to see her husband beaten up. Most of the torture during this detention took place at the facility known as CIA Staff Ladha Kothi, Sangroor, Punjab. Har Narinder Singh was In charge of the facility (a.k.a SHO), Gurinder Singh Dhillon was SSP of Sangroor District, Sumedh Saini was Additional Director General of Punjab Police (AGP) and one P.C. Dogra was Director General of the Punjab Police (DGP) and Defendant was

chief executive and head o the Government and responsible for the acts of all the police officers working in his state.

ii. **December 14, 2007:** Petitioner was taken into illegal custody by the from Sangroor Punjab, and was detained for 8 days without being charged with any crime. Detained and tortured the facility known as Kotwali Sangroor. Balwinder Singh was in charge of the facility (SHO) during the time the petitioner was tortured, Pritpal Singh Thind was Deputy Superintendent of Police (DSP) of that area, Arunpal Singh was Senior Superintendent of Police (SSP) of that area, Sumedh Saini was Assistant Director General of Punjab Police (AGP).

The Petitioner's detention was reported in the Newspaper Punjabi Tribune and Desh Sewak.

iii. **January 08, 2008:** Petitioner was taken into custody by the police from Sangroor Punjab, and was detained for 6 days without being charged for any crime. The petitioner was detained and tortured at the facility known as CIA Staff Ladha Kothi, Sangroor, Punjab. The petitioner's detention was reported in The Tribune (English Newspaper), Chandigarh.

iv.   **March 06, 2009**:   Petitioner was taken into custody from Sangroor, Punjab, and was detained for 4 days without being charged with any crime. The petitioner was detained Police Station Dharam Gharh, Punjab India and was tortured during the detention. The SHO in charge of the facility at that time was Baljit Singh and Arunpal Singh was SSP of the area and Sumedh Saini was AGP. The petitioner's detention was Reported in the Newspaper "The Tribune", Punjabi and English.

v.   **SPECIFIC ACTS OF TORTURE**:

During the above listed detentions by the Punjab Police and security forces, the petitioner was subjected to following acts of torture perpetrated by the members of Police and security forces:

   I.   Beaten with leather belts.

   II.   Wooden rollers on legs and thighs.

   III.   Water Boarding

   IV.   Legs pulled and stretched apart.

31) **Gurdeep Kaur,** petitioner, was born into Sikh Family and is a baptized Sikh, wife of petitioner Jeet Singh and herself a supporter of demand for independent Sikh state of Khalistan. During her stay in Punjab the petitioner was subject to following incidents and acts of torture:

    i.    **February 2001:**    Gurdeep Kaur along with her husband Jeet Singh was taken into custody by the Police from Sangroor, Punjab and was kept in illegal detention for 30 days without being charged with any crime. During the detention, Gurdeep Kaur was severely beaten and tortured and at time was forced to see her husband Jeet Singh beaten to mentally torment her. Most of the torture during this detention took place at the facility known as CIA Staff Ladha Kothi, Sangroor, Punjab. Har Narinder Singh was In charge of the facility (a.k.a SHO), Gurinder Singh Dhillon was SSP of Sangroor District, Sumedh Saini was Additional Director General of Punjab Police (AGP) and one P.C. Dogra was Director General of the Punjab Police (DGP) and Defendant was chief executive and head o the Government and responsible for the acts of all the police officers working in his state.

    ii.    **SPECIFIC ACTS OF TORTURE:**

        During the above listed detentions by the Punjab Police and security forces, the petitioner was subjected to severe physical beatings by both female and male police officers, including repeated slapping,

pulling of her hair and banging of her head against the wall. The petitioner was also forced to see her husband being tortured.

32) **Jagtar Singh,** Petitioner is a Sikh male from Punjab, India, Member and supporter of SAD-Mann and supporter of Khalistan. Petitioner was illegally detained and tortured by the Punjab Police, during the Badal regime, on the following occasions:

   i. **December 1999**: Petitioner was taken into custody by the police from Fatehgarh Sahib, Punjab and was detained at Police Station Fatehgarh Sahib, Punjab for 5 days without being charged with any crime.

   ii. **September 2008**: Petitioner was taken into illegal custody by the police from Sehna, Punjab, and was detained at the facility known as "CIA Staff Barnala" located in Barnala, Punjab, operated and controlled by Punjab Police and/or other security forces in Punjab.

   iii. **SPECIFIC ACTS OF TORTURE:**

During the above listed detentions by the Punjab Police and security forces, the petitioner was subjected to following acts of torture perpetrated by the members of Police and security forces:

   I. Given electric shocks on ears

   II. Laid on ice slabs

III. Poured cold water

IV. Beaten with leather belts and wooden sticks

V. Wooden rollers on legs and thighs

VI. Legs pulled and stretched apart.

VII. Tied down in wooden trap for extended period to time.

### Defendants' Participation, Role and Responsibility

33) Defendant Sukhbir has been the Deputy Chief Minister and Home Minister of the State of Punjab from 2009 till today and heads all the security forces in Punjab particularly Punjab Police.

34) Defendant Parkash was Chief Minister (CM) of the State of Punjab from 1997-2002 and from 2007 till present and as Chief Minister is over all head of the security forces in Punjab, particularly Punjab Police.

35) The defendants, individually and/or jointly, are directly and ultimately responsible for the actions of all the government machinery and particularly the security forces and the Punjab Police the operating under his command and control.

36) The defendants, individually and/or jointly, exercise and during relevant times exercised full control over the security forces in Punjab and Punjab Police, particularly, appointment, transfer, promotion, demotion, suspension

and relegation of officers and members of the security forces and particularly Punjab Police.

37) The defendants, throughout their tenure have actively shielded, protected and promoted the police officers who were or have been involved in gross human rights violations, extra judicial killings and torture.

38) The defendant Parkash during his tenure as Chief Minister from 1997-2002 and 2007 till present not only connived from covered up the unlawful acts of the police officer committed during 1984-97 but also allowed and acquiescenced commission of acts of torture by the police and other security forces under his command.

39) It is believed and estimated that from June 1984 till today, well over 100,000 (one hundred thousand) have been extra judicially killed and several hundred thousand tortured by the Punjab Police and other security forces in the state of Punjab, out of which well over 10,000 (ten thousand) cases of torture and extra judicial killings took place during the tenure of and while the defendant Parkash was Chief Minister of Punjab.

## RECENT HUMAN RIGHTS ABUSES IN PUNJAB UNDER THE COMMAND OF DEFENDANTS

40) After the Plaintiffs filed a civil lawsuit against Defendant Parkash in August 2012 for human rights violation, the defendants Parkash and Sukhbir, individually and jointly, unleashed a rein of terror, intimidation and abuse against the family members of named plaintiffs living in India and others who are associated with named plaintiffs in India.

41) On August 08, 2012, soon after the news of lawsuit against Defendant Parkash got out, Punjab Police started harassing the family members, relatives and friends of Plaintiff Jeet Singh in India. Police raided and threatened Plaintiff's relatives with dire consequences if he did not back off from perusing the lawsuit against Chief Minister Parkash Badal.

42) On August 10, 2012, a police party headed by the Station House Officer (SHO) raided Plaintiff Jeet Singh's family home in village Bhawani Garh, District Sangrur where his brother Malkit Singh resides. The police harassed his brother, brother's wife and children and told them that Jeet Singh's actions against Chief Minister Badal will bring peril to all of them. The police threatened plaintiff's brother that if Jeet Singh did not back off from the lawsuit, they will stage "encounter" of his family to teach him a lesson. After three days police again raided plaintiff Jeet Singh's family home. This time, the police party was headed by the Deputy Superintendent of Police (DSP). The police again threatened his brother that Jeet Singh has still not backed off and

now his family will have to pay the price for his actions against Chief Minister Badal.

43) On August 18, 2012, a police party also raided plaintiff Jeet Singh's sister in law (wife's sister) Gurbachan Kaur in village Siana Saidan, District Kurkshetar, Haryana. Police physically abused Gurbachan Kaur and her husband Shamsher Singh and asked them to tell the plaintiff that police can reach his relatives who are living in other states too and that if he did not stop pursuing the case against Badal, police will punish his relatives.

44) On or about August 19, 2012 Police raided the house of Manjit Singh, current General Secretary of SAD (Mann) District Sangrur and threatened him to disassociate himself from supporting the case against Badal.

45) In December 2012, the police again raided plaintiff Jeet Singh's ancestral home in village Alloarakh, Post Office Bhawani Garh, District Sangrur and threatened his family to persuade him into withdrawing the cased filed against CM Badal in the United States.

46) On February 24, 2013, a contingent of Punjab Police Counter Intelligence Department raided plaintiff Jeet Singh's ancestral home at village Alloarakh, Post Office Bhawani Garh, District Sangrur where his mother Angrez Kaur lives with his brother Malkit Singh. The police told his family that despite warnings, Jeet Singh has not withdrawn the case against CM Parkash Singh

Badal and is continuing to pursue it in the court. The police threatened plaintiff's mother with dire consequences and told her "now we will bring Jeet Singh back to India from USA and he will rot in the jail cell".

47) That family members, relatives, friends acquaintances and associates of other above named plaintiffs, who were also co-plaintiffs in other human rights violation lawsuit against Defendant Parkash, also faced similar threats, intimidation and terror from defendants and/or from their agents on behest of defendants.

48) On March 29, 2012, one Jaspal Singh, 18, of Village Chour Sidhwan, District Gurdaspur, Punjab was killed extra judicially by the Punjab Police.

49) On March 14, 2011, one Sohan Singh, alias Sohanjit Singh was tortured to death in the custody of Punjab, Police, in the city of Amritsar, Punjab.

50) On January 18, 2011, Shaminder Singh alias Shera of village Babbowal, District Hoshiarpur, Punjab, was extra judicially killed by the Punjab Police.

51) On December 06, 2009, Darshan Singh, was killed extra judicially by the Punjab Police, in Ludhiana, Punjab.

52) Not a single police officer in charge and responsible for the extra judicial killings have been investigated or prosecuted by the Defendant.

### A. Inadequacy of Local Remedies

53)      Upon information and belief, as practical matter and proven fact, no

adequate remedies are available to Plaintiffs under the systems in India. In fact,

Indian governments, both State and Federal, unabashedly practice "impunity"

towards the human rights violators. All efforts by or on behalf of the plaintiffs,

or others similarly situated, to seek adequate remedy against the police officers

and/or defendant have been countered by the defendant through his influence

and position, and in fact the defendant has openly shields, protects and

promotes the police officers involved in human rights violations. The case of

Sumedh Saini, currently DGP of Punjab Police is telling, whom the defendant

not only protects from court cases but has also promoted and appointed him as

Director General of Punjab Police. In another instance, notorious Police Officer

K.P.S Gill who has been responsible for numerous cases of tortures and extra

judicial killings, has been appointed as advisor to the Defendant's regime. All

this establishes the inadequacy of local remedies available to the petitioners.

## General Allegations

54)    The acts described in this Complaint were ordered and/or committed and

were in the knowledge of or should have been in the knowledge of the

23

defendant, by the police and security forces in Punjab, upon whom the defendant exercises direct control and command and defendant has failed

55) The defendants, individually and/or jointly, directly or indirectly, ordered, participated, acquiescence, connived, was aware of, the unlawful act of security forces and Punjab Police committed in the State of Punjab during his tenure as Chief Minister.

56) The defendants, individually and/or jointly, authorized, commanded, or directed the unlawful acts of the security forces and Punjab Police operating under his command and authority.

57) The defendants, individually and/or jointly,knew or should have known that the security forces and particularly Police of the State of Punjab of which he is and was head of the Executive during his tenure, committed acts of torture, abuse and inhuman and cruel treatment against the named and unnamed individual Defendants.

58) The defendants, individually and/or jointly, failed to punish or ratified such unlawful acts committed by the security forces and Police of the State of Punjab.

59) The defendants, individually and/or jointly,failed to take adequate and appropriate measures to prevent police officers and members of security forces in his State from committing acts of torture and violations of human rights?

60) The defendants, individually and/or jointly, acted upon, promoted and continues to promote and practice "impunity" towards the members of security forces and police officers who have been involved in torture and human rights abuses.

61) The defendants' regime is guilty of impunity by defending the notorious Police Officer Sumedh Saini, currently Director General of Punjab Police, before the courts in complaints of human rights violations.

62) The defendants' actions, taken individually and/or jointly, relating to security forces and police in Punjab, during 1997-2002 and 2007-2012 give rise to liability under applicable international and domestic laws.

## FIRST CLAIM FOR RELIEF
*(Crimes Against Humanity)*

63) Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 49 of this Complaint as if fully set forth herein.

64) The abuses committed against Plaintiffs and decedents constitute crimes against humanity. Defendant knew or should have known that police and security forces under his command and control torture and extra judicially kill individuals in Punjab.

65)     Defendants, by virtue of inhuman acts, also caused great suffering and /or serious injury to body or to mental or physical health.

66)     Defendants' acts and omissions constitute "tort[s]…committed in violation of the law of nations or a treaty of the United States" under 28 U.S.C § 1350 and also violate 28 § 1331 in that the acts and omissions against Plaintiff's violated customary international law as reflected , expressed, and defined in multilateral treaties and other international instruments ,international and domestic judicial decisions, and other authorities.

67)     The acts and omissions constituting crimes against humanity caused Plaintiff's to suffer damages, including severe physical and mental pain and suffering, in amounts to be determined at trial.

68)     Defendants' acts and omissions were deliberate, willful, intentional, wanton, malicious, and/or oppressive, and should be punished by an award of punitive damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

*(Cruel, Inhuman, or degrading Treatment or Punishment)*

69)     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 56 of this Complaint as if fully set forth herein.

70)     The abuses committed against Plaintiff's and Decedents described herein each separately constitute cruel, inhuman or degrading treatment or punishment. These acts include, but are not limited to: severe beating; giving electric shocks; laying on the ice slabs; pouring cold water; beating with leather belts and wooden sticks; rolling wooden rollers on legs and thighs; pulling and stretching of legs apart; tying down in wooden trap for extended period to time and slapping, resulting in severe physical and psychological abuse and agony, humiliation, fear and debasement; the injury and in some cases death.

71)     Defendant's acts also constitute torts committed in violation of the law of nations, and thus of the United States, as reflected in federal common law which incorporated extrajudicial killing, pursuant to 28 U.S.C §§ 1331 and 1350 .

72)     Decisions and other authorities. Extrajudicial killing is similarly reflected, expressed, defined and codified in multilateral treaties and other instrumental instruments, international and domestic judicial decisions, and other authorities, and is thus actionable.

73)     Defendants' acts and omissions described caused Plaintiffs to suffer damages, including severe mental and emotional pain and suffering in an amount to be proven in trial.

74) Defendants' acts and omissions were deliberate, willful, intentional, wanton, malicious and oppressive, and should be punished by an award of punitive damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

*(Extrajudicial Killing)*

75) Plaintiffs' re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 60 of this complaint as if fully set forth herein.

76) With regard to the events alleged herein, Defendant himself or through officers of the force under his control, acted under the actual or apparent authority and/or color of law of the state of India.

77) The killings of decedents' were deliberate and not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees that are recognized as indispensable by civilized peoples. The killings were not lawfully carried out under the authority of any country or court.

78) The killings of Decedents constitute extrajudicial killings as defined by the Torture Victim Protection Act, Pub .L. No. 102-256,106 Stat.73 (1992) (codified at 28 U.S.C § 1350, note). Additionally, the killings constitute torts committed in violation of the law of the nations, and thus of the United States,

as reflected in federal common law which incorporates extrajudicial killings as a violation, pursuant to 28 U.S.C. §§ 1331 and 1350.The conduct constitutes violations of the law of nations and customary international law prohibiting extrajudicial killing, reflected, expressed, defined and codified in multilateral treaties and other international instruments and domestic judicial decisions and other authorities.

79)    Defendants knew or should have known that police and security forces under his command and control torture and extra judicially kill individuals in Punjab.

80)    Upon information and belief, no adequate remedies were available to the Plaintiff's as a practical matter in India.

81)    Defendants' acts and omissions caused Plaintiffs and Decedent's next of kin to suffer damages, including severe physical and mental pain and suffering in amounts to be determined at trial.

82)    Defendants' acts and omissions were deliberate, willful, intentional, wanton, malicious, and/or oppressive, and should be punished by an award of punitive damages in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

*(Negligence)*

83) Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 70 of this Complaint as if fully set forth herein.

84) Defendants owned a duty to Plaintiffs because the police and other forces under the command and control of the defendant were known for human rights violations, custodial torture and extra judicial killings and defendant owed a duty to Plaintiff to not only control the police and other forces under his command but also to punish the police officers involved in such acts but the defendant has been doing just the opposite.

85) Beyond mere negligence, Defendants' acts were deliberate, willful, intentional, wanton, malicious, and/or oppressive, and should be punished by an award of punitive damages in addition to compensatory damages, in respective amounts to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### (Battery)

86) Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 73 of this Complaint as if fully set forth herein.

87) Defendants through the forces in their command and control engaged in such contact with the plaintiffs that caused harm to the plaintiffs and the defendant intended to bring about this contact.

88)        As a direct and proximate act of omission of the Defendant,

Plaintiff's, other members of class and their decedents were harmed. It was

reasonably foreseeable that the attack would cause this harm.

89)        Defendants' acts and omissions caused Plaintiff's to suffer damages,

including severe physical and mental pain and suffering, in amounts to be

determined at trial.

90)        Defendants' acts and omissions were deliberate, willful, intentional,

wanton, malicious, and/or oppressive, and should be punished by an award of

punitive damages in amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

*(Intentional Infliction of Emotional Distress)*

91)        Plaintiffs re-allege and incorporate by reference the allegations set

forth in paragraphs 1 through 78 of this Complaint as if fully set forth herein.

92)        Defendants were in charge and in command of the police force and

security forces and knew or should have known that the actions of the forces

under his command would result in death and injuries the plaintiffs.

93)        Defendants intended to bring about this contact.

94)        Defendants intended to cause Plaintiffs to suffer humiliation, mental

anguish and extreme emotional distress or, alternatively, Defendant recklessly

31

disregarded a substantial probability of causing humiliation, mental anguish, and severe emotional distress to Plaintiffs with his conduct.

95)       As a direct and proximate cause of Defendants' outrageous conduct, Plaintiffs suffered severe emotional distress and mental suffering. It was reasonably foreseeable that the attack would cause this suffering.

96)       Defendants' acts and omissions were deliberate, willful, intentional, wanton, malicious, and/or oppressive, and should be punished by an award of punitive damages in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF

*(Negligent Infliction of Emotional Distress)*

97)       Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 84 of this Complaint as if fully set forth herein.

98)       Defendants owed a duty to Plaintiffs to refrain from intentional and wantonly harmful or outrageous conduct.

99)       Defendants violated this duty and created an unreasonable and foreseeable risk of substantial bodily harm or death to the Plaintiffs.

100)      Plaintiffs have suffered and will continue to suffer extreme mental anguish and emotional distress that was directly caused by the trauma, shock,

32

and fear that they experienced during and directly after the violent attacks orchestrated by the Defendant.

101) `Moreover, Defendants' conduct caused the named Plaintiff's and other members of the class to witness members of their immediate families suffer torture and/or violent deaths or grave physical injury. Defendant's conduct was a substantial factor in bringing about the injuries and deaths to which Plaintiff's bore witness.

102) When he acted, commanded, directed and/or allowed to happen the attack, Defendants carelessly and negligently ignored the obvious risk of causing Plaintiffs this trauma, shock, fear and severe emotional and mental suffering. Defendants' disregard for the substantial risk of causing this trauma, suffering, and fear was so extreme in degree, as to go beyond all possible bounds of decency, and are utterly outrageous and intolerable in a civilized community.

103) In this manner, Defendants negligently inflicted severe emotional distress upon Plaintiffs. Defendants' acts and omissions caused Plaintiffs to suffer damages in amounts to be determined at trial.

## V. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment against Defendant as follows:

a) For compensatory damages in an amount to be proven at trial;

b) For  punitive and exemplary damages in an amount to be proven at trial;

c) For reasonable attorney's fees and cost of suits;

d) For a declaratory judgment holding that Defendants' conduct was in violation of the laws of nations.

e) For such other and further relief as the Court may deem just and proper.

A jury trial is demanded on all issues

Dated: June 25, 2013

**PLAINTIFF**
**"Sikhs for Justice"**
through its Coordinator -- Avtar Singh
Empire State Building
350 Fifth Ave, 59th Floor,
New York, NY 10118
T: 212.301.2707 &  F: 212.601.2610

**PLAINTIFF**
Shiromani Akali Dal (Amritsar) a.k.a SAD-Mann
through its International General Secretary Jeet Singh
2409 North Valentine Ave,
Fresno, CA 93722

34

**PLAINTIFF**

Jeet Singh
2409 North Valentine Ave,
Fresno, CA 93722

Gurdeep Kaur
**PLAINTIFF**

Gurdeep Kaur
2409 North Valentine Ave,
Fresno, CA 93722

**PLAINTIFF**

Jagtar Singh
1975 North Antioch Ave, Fresno, CA 93722

35

## AFFIDAVIT

I Jeet Singh son of Gurdial Singh currently residing in California duly sworn solemnly affirm and declare as under:

1.      That my name is Jeet Singh. I am International General Secretary of Shiromani Akali Dal Amirtsar (Mann). I am residing in USA since April 2009. While living in India I was illegally detained and tortured by the Punjab Police on several occasions due to my political activities.

2.      That I am one of plaintiffs in a civil lawsuit pending before the U.S. District Court for the Eastern District of Wisconsin under Alien Torts Claims Act and Torture Victims Protection Act (Case # 12-c-0806). The lawsuit is filed against Parkash Singh Badal, current Chief Minister of the State of Punjab, India as he controls and heads the police and security forces that illegally detained and tortured me.

3.      That the said lawsuit was filed on August 08, 2012 and summons were issued by the court which were served on Parkash Badal while he was visiting the United States of America.

4.      That on August 08, 2012, soon after the news of lawsuit against Badal got out, Punjab Police started harassing my family members, relatives and friends in India. Police raided and threatened my relatives with dire consequences if I did not back off from perusing the lawsuit against CM Badal.

5.      That on August 10, 2012, a police party headed by the Station House Officer (SHO) raided my family home in village Bhawani Garh, District Sangrur where my brother Malkit Singh resides. The police harassed my brother, his wife and children and told them that Jeet Singh's actions against Chief Minister Badal will bring peril to all of you. The police threatened my brother that if Jeet Singh did not back off from the lawsuit, they will stage "encounter" of his family to teach him a lesson.

6.      That after three days police again raided my family home. This time, the police party was headed by the Deputy Superintendent of Police (DSP). The police again threatened my brother that Jeet Singh has still not backed off and now his family will have to pay the price for his actions against Chief Minister Badal.

7.      That on August 18, 2012, a police party also raided my sister in law Gurbachan Kaur (my wife's sister) in village Siana Saidan, District Kurkshetar, Haryana. Police physically abused Gurbachan Kaur and her husband Shamsher Singh and asked them to tell me that police can reach my relatives who are living in other states too and that if I did not stop pursuing the case against Badal, police will punish my relatives.

1 |

8.      That on or about August 19, 2012 Police raided the house of Manjit Singh, current General Secretary of SAD (Mann) District Sangrur and threatened him to disassociate himself from supporting the case against Badal.

9.      That on or about August 28, police again raided my sister in law Gurbachan Kaur and repeated the threats and harassment.

10.     That in December, the police again raided my ancestral home in village Alloarakh, Post Office Bhawani Garh, District Sangrur and threatened my family to pursuade me into withdrawing the cased filed against CM Badal in the United States.

11.     That on February 24, 2013, a contingent of Punjab Police Counter Intelligence Department raided my ancestral home at village Alloarakh, Post Office Bhawani Garh, District Sangrur where my mother Angrez Kaur lives with my brother Malkit Singh. The police told my family that despite our warning, Jeet Singh has not withdrawn the case against CM Parkash Singh Badal and is continuing to pursue it in the court. The police threatened my mother with dire consequences and told her "now we will bring Jeet Singh back to India from USA and he will rot in the jail cell".

12.     That ever since I have filed this lawsuit against CM Parkash Badal, Punjab Police has been continuously threatening my family members, relatives and friends who are in India.

13.     That I am giving this statement to report the ongoing and continuous threats and harassment by the police to my family in India on account of my filing of a human rights abuse lawsuit against the Chief Minister of the State of Punjab.

## VERIFICATION:

I verify that the above statement has been read and translated to me in Punjabi and I verify that the contents of this statement are exactly the same as narrated by me and are true and accurate to the best of my belief, information and recollections.

Dated:_____                                    ( Jeet Singh )

2 |

## AFFIDAVIT

I Jagtar Singh son of Chand Singh currently residing in California duly sworn solemnly affirm and declare as under:

1. That my name is Jagtar Singh. I am an active member of Shiromani Akali Dal Amirtsar (Mann). I am residing in USA since June 2009. While living in India I was illegally detained and tortured by the Punjab Police on several occasions due to my political activities.

2. That I am one of plaintiffs in a civil lawsuit pending before the U.S. District Court for the Eastern District of Wisconsin under Alien Torts Claims Act and Torture Victims Protection Act (Case # 12-c-0806). The lawsuit is filed against Parkash Singh Badal, current Chief Minister of the State of Punjab, India as he controls and heads the police and security forces that illegally detained and tortured me.

3. That the said lawsuit was filed on August 08, 2012 and summons were issued by the court which were served on Parkash Badal while he was visiting the United States of America.

4. That on August 08, 2012, soon after the filing of lawsuit against Badal, Punjab Police started harassing my family members, relatives and friends in India. Police raided and threatened my relatives with dire consequences if I did not back off from pursuing the lawsuit against CM Badal.

5. That on August 9, 2012, a police party headed by Deputy Superintendant of Police, Tapa and the Station House Officer (SHO) of Sehna raided my family home in village Gill Kothe Sehna, District Barnala where my parents, Chand Singh and Gurnam kaur and brothers Nihal Singh, Darshan Singh and Chamkaur Singh reside. The police interrogated my family about my activities in United States and threatened them that Jagtar Singh have thrown himself in Lion's den by acting against the Chief Minister and that this will only bring trouble to all of you.

6. That police made several raids after that day at my home and even summoned my family to police stations and exerted pressure on my family to have me withdraw my name from the law suit. The police accused my younger brother Chamkaur Singh, who is an active member of Shiromani Akali Dal Mann of being a terrorist and threatened him that if Jagtar Singh did not back off from the lawsuit, they will eliminate him in an "encounter" to teach Jagtar Singh a lesson. The police sternly warned my family not to go to press and it will only add to their woes.

7. That all my family members are peace loving citizens and had volunteered to present themselves before the police as and when instructed to but the police continue

3 | P a g e

to raid our home and harass them at the behest of the Chief Minister and his Police chief, Sumedh Singh Saini. The police has alleged that Jagtar Singh is a militant and absconder.

8. That only recently, in the middle of April, 2013, a Punjab Police party raided my home at village Gill Kothe Sehna, District Barnala and reprimanded my family for failing to convince me to withdraw from the complaint against the Chief Minister, Parkash Singh Badal. The police told my family that despite our warning, Jagtar Singh has not withdrawn the case against CM Parkash Singh Badal and is continuing to pursue it in the court. The police threatened my family that they will bring Jagtar Singh back from United States and teach him a lesson.

9. That ever since I have filed this lawsuit against CM Parkash Badal, Punjab Police has been continuously threatening my family members, relatives and friends who are in India. The police has been very harsh on my aged parents and been especially targeting my younger brother, Chamkaur Singh who like me is politically active with Shiromani Akali Dal Mann and openly threatened to take it out on my younger brother.

10. That I am giving this statement to report the ongoing and continuous threats and harassment by the police to my family in India on account of my filing of a human rights abuse lawsuit against the Chief Minister of the State of Punjab.

VERIFICATION:

I verify that the above statement has been read and translated to me in Punjabi and I verify that the contents of this statement are exactly the same as narrated by me and are true and accurate to the best of my belief, information and recollections.

Jagtar Singh

Dated:_____ ( Jagtar Singh )

## AFFIDAVIT

I Gurdip Kaur wife of Jeet Singh currently residing in California duly sworn solemnly affirm and declare as under:

1.    That my name is Gurdip Kaur. My husband Jeet Singh is International General Secretary of Shiromani Akali Dal Amirtsar (Mann). I am residing in USA since September, 2004. While living in India I was illegally detained and tortured by the Punjab Police on several occasions due to my political activities.

2.    That I am one of plaintiffs in a civil lawsuit pending before the U.S. District Court for the Eastern District of Wisconsin under Alien Torts Claims Act and Torture Victims Protection Act (Case # 12-c-0806). The lawsuit is filed against Parkash Singh Badal, current Chief Minister of the State of Punjab, India as he controls and heads the police and security forces that illegally detained and tortured me.

3.    That the said lawsuit was filed on August 08, 2012 and summons were issued by the court which were served on Parkash Badal while he was visiting the United States of America.

4.    That on August 08, 2012, soon after the news of lawsuit against Badal got out, Punjab Police started harassing my in laws family members, relatives and friends in India. Police raided and threatened my own relatives with dire consequences if I did not back off from perusing the lawsuit against CM Badal.

5.    That on August 10, 2012, a police party headed by the Station House Officer (SHO) raided my in laws' home in village Bhawani Garh, District Sangrur where my brother in law Malkit Singh resides. The police harassed my brother in law, his wife and children and told them that my husband Jeet Singh's actions against Chief Minister Badal will bring peril to all of you. The police threatened my brother in law that if my husband Jeet Singh did not back off from the lawsuit, they will stage "encounter" of his family to teach him a lesson.

6.    That after three days police again raided my in laws' family home. This time, the police party was headed by the Deputy Superintendent of Police (DSP). The police again threatened my brother in law that my husband Jeet Singh has still not backed off and now his family will have to pay the price for his actions against Chief Minister Badal.

7.    That on August 18, 2012, a police party also raided my sister Gurbachan Kaur's home in village Siana Saidan, District Kurkshetar, Haryana. Police physically abused Gurbachan Kaur and her husband Shamsher Singh and asked them to inform me and my husband Jeet Singh that police can reach my relatives who are living in other states too and that if I did not stop pursuing the case against Badal, police will punish my relatives.

8.. That on or about August 28. police again raided the home of my sister Gurbachan Kaur and repeated the threats and harassment. The police enquired from them if they ever tried to dissuade me and my husband to pursue the case against Badal.

9. That on February 24, 2013, a contingent of Punjab Police Counter Intelligence Department raided my in laws' ancestral home at village Alloarakh. Post Office Bhawani Garh. District Sangrur where my mother in law Angrez Kaur lives with my brother in law Malkit Singh. The police told my in laws' family that despite our warning. Jeet Singh has not withdrawn the case against CM Parkash Singh Badal and is continuing to pursue it in the court. The police threatened my mother in law with dire consequences and told her "now we will bring Jeet Singh back to India from USA and he will rot in the jail cell".

12. That ever since I have filed this lawsuit against CM Parkash Badal, Punjab Police has been continuously threatening my family members. relatives and friends who are in India.

13. That I am giving this statement to report the ongoing and continuous threats and harassment by the police to my family in India on account of my filing of a human rights abuse lawsuit against the Chief Minister of the State of Punjab.

VERIFICATION:

I verify that the above statement has been read and translated to me in Punjabi and I verify that the contents of this statement are exactly the same as narrated by me and are true and accurate to the best of my belief. information and recollections.

Dated:_____

(Gurdip Kaur)

Case 2:13-cv-00723-LA   Filed 06/26/13   Page 41 of 43   Document 1







# Affidavit

I, Simranjit Singh Mann state that I have been a serving officer in the Indian Police Service (IPS), serving as an officer under the Government of Punjab and the Government of India in the following capacity;

1. ASP – Ludhiana 1968 to 1969
2. 1970-1972- Served as A.D.C. Governor of Punjab, Dr. D.C. Pavate and M.M. Chaudhry.
3. Commandant PAP, Jalandhar.
4. SP Head Quarters, Ferozpur.
5. Deputy Director of Vigilance Bureau, Chandigarh.
6. SSP Ferozpur.
7. SSP Faridkot.
8. Assistant Inspector General of Railways Police, Patiala.
9. SP CID Punjab, Chandigarh.
10. Group Commandant CISF Bombay (Govt. of India) from 1982 to 1984.



- 01 June 1987: Elected President of the newly-formed UNITED SHIROMANI AKALI DAL in absentia. Was incrasarated in Bhagalpore Jail, Bihar.

- November 1989: Elected by an overwhelming majority, while in Bhagalpur prison, as MEMBER OF LOK SABHA (Indian Lower House of Parliament) from the Tarn Taran constituency in the Punjab.

- After the 1991-break-up of the United Akali Dal, continued as President of the Shiromani Akali Dal (Mann) faction. During his tenure as President of Shiromani Akali Dal (Mann), the party resolved to struggle for the right to self-determination for the Sikh people.

- In April 1994, acting out of deference to supplications for a unity of Sikh leaders by the Jathedar, Sri Akal Takht, in order to form a new united Shiromani Akali Dal party, I resigned his post and disbanded his party. I am only signatory of the *Amritsar Declaration*, which provides for a confederation in South Asia, who still stands by the letter and spirit of the document.

  - Presently, I am the heads the Shiromani Akali Dal (Amritsar).
  - In 1996 I was elected Member of the SGPC form Bassi Pathana Constituency.

1

- In October 1999, I was elected Member of Parliament from Sangrur constituency.
- Leader, Shiromani Akali Dal (Mann) Parliamentary Party, Lok Sabha.
- 1999-2000 : Member, Committee on Communications.
- 2000 onwards : Member, Consultative Committee, Ministry of External Affairs, Govt. of India.
- 2002 onwards : Member, Standing Committee on Home Affairs, Govt. of India.

As such I have an understanding of the Constitution of India, the law and order functioning of the Government of Punjab and the Union Government of India and particularly the hierarchy of the Punjab Police as well as an understanding of the offices of the Punjab Advocate General

Currently I am the President of the political party Shiromani Akali Dal (Amritsar), having been a part of Punjab politics since 1989. I am witness to the extra judicial killings orchestrated by the Punjab Police and the subsequent cover up of the killings by intimidation, coercion and violation of the rule of law under direct rule of the Union Government of India and also by the elected Governments of Punjab under Beant Singh, Harcharan Singh Brar, Rajinder Kaur Bhattal, Capt. Amarinder Singh and the incumbent Prakash Singh Badal.

In the current case we were a witness to the police threats given to Jagtar Singh Sehna, who is plaintiff Jeet Singh Aloarkh and Gurdip Kaur's relative. I am attaching a copy of the press statement that we made with regards to this intimidation.

I wish to testify before this august court that coercion by implication in false cases, harassment through police raids, targeting of family members and false encounters leading to elimination has been a part of the functioning of the Punjab Police to command and control any given situation. I further testify that knowledge, use and orders to implement these methods are in the hands of the police headquarters, which includes the Counter Intelligence office. as well as the political head of the state the Chief Minister

I further testify that Deputy Inspector general (DIG) of the Counter Intelligence wing, Ananya Gautam, has been an integral part of police planning and functioning of the above activities. As per the functioning of the Punjab Police they are bound to look after the interests of the Chief Minister of Punjab. As the Punjab Police officer looking after the current case lodged in this august court, Ananya Gautam has knowledge and command of the coercive measures used by the Punjab Police against the plaintiffs Jeet Singh Aloarkh and Gurdeep Kaur relatives Jagtar Singh Sehna.

I identify the deponent/
executant to whom
I have personally who signed
in my presence

ATTESTED
AS IDENTIFIED
Kumar Gupta
NOTARY  14 r3 2013

Simranjit Singh Mann,
President,
Shiromani Akali Dal (Amritsar).

14·3·13